UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MYRA L. WILMORE,      ) | |
| ) | |
| Plaintiff,      ) | Case No. CV 12-02462 AJW |
| ) | |
| v.      ) | MEMORANDUM OF DECISION |
| ) | |
| MICHAEL J. ASTRUE,      ) | |
| Commissioner of the Social      ) | |
| Security Administration,      ) | |
| ) | |
| Defendant.      ) | |
| _____) | |

     Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

     The parties are familiar with the procedural facts. [See JS 2-3]. In a May 18, 2011 written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff has severe impairments consisting of degenerative joint disease of the left knee, hypertension, hyperlipidemia, and obesity. [Administrative Record ("AR") 25]. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work. [AR 27]. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff acquired work skills from

past relevant work that are transferrable to other jobs, including family case worker and community relations worker, that exist in significant numbers in the national economy. [AR 29-30]. Therefore, the ALJ found plaintiff not disabled at any time through the date of the decision. [AR 31].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Credibility finding**

Plaintiff contends that the ALJ improperly rejected her testimony about her subjective symptoms. [JS 4-9, 12-13].

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885. "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219,

1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The record shows that plaintiff reported a history of pain in her knees since January 2009. [AR 225]. At an August 5, 2009 consultative examination, plaintiff displayed a decreased range of motion and tenderness in both knees. [AR 227]. An x-ray taken that same day revealed mild to moderate degenerative disease of the left knee, particularly in the medial compartment. [AR 230]. Laboratory results showed that plaintiff had high cholesterol in May 2009 and February 2010. [AR 320, 325]. In March 2010, she was diagnosed with hyperlipidemia and hypertension. [AR 298-300]. In June 2010, plaintiff was admitted to the hospital for a headache. [AR 274]. She had high blood pressure and was again diagnosed with hypertension. [AR 275]. In October 2010, plaintiff weighed 196 pounds and her height was 63 inches. [AR 283]. Using a calculator provided on the Centers for Disease Control and Prevention website, plaintiff had a Body Mass Index of 34.7, which is considered obese.[1]

Plaintiff characterizes her hearing testimony as follows:

> [S]he stopped working because she could not stay up on the medication. [She] testified that she could not perform her old job [as a drug and alcohol counselor] because she would have to walk around every 15 minutes doing bed checks and she had no energy to help people. [She] testified that she suffers from pain in the knees and that during a typical day she spends about two hours on her feet. [She] testified that during a typical day she does not do much with her grandchildren and does not do grocery shopping. [She] testified that she takes the bus for transportation and can make meals.

[JS 5 (citing AR 109-110, 112-113, 116-117)].

---

[1] See http://www.cdc.gov/healthyweight/assessing/bmi/ (last visited Jan. 4, 2013).

The ALJ concluded that plaintiff's testimony about her subjective symptoms was not fully credible. Specifically, the ALJ found that plaintiff retained the RFC to lift or carry ten pounds frequently and occasionally, sit for six hours in an eight-hour workday, and stand or walk for two hours in a eight-hour workday. [AR 27]. Plaintiff's RFC also included occasionally pushing or pulling with the lower extremities. [AR 27]. However, the ALJ restricted her from climbing ladders, ropes or scaffolds; kneeling, crouching, or crawling; and exposure to unprotected heights and hazardous machinery. [AR 27].

Plaintiff's contention that the ALJ "fail[ed] to consider [her] testimony" [JS 8] is unfounded. In fashioning the RFC, the ALJ specifically stated that the RFC was consistent with "the condition described in the record, the claimant's own daily activities, and the testimony of the medical expert who reviewed the entire record and was present for claimant's testimony." [AR 27]. The ALJ summarized plaintiff's testimony about her daily activities, which were inconsistent with her subjective testimony that her symptoms were disabling. For example, the ALJ noted that plaintiff testified she lives with and cares for her adult disabled son and two grandchildren, who were eight and nine years old at the time of the hearing. [AR 28, 110-111]. She testified that she watches over them, makes meals, and does the laundry. [AR 110-111, 116]. She also testified that she provides "home services" to her disabled son. [AR 108]. Because her son has "a lot of children," the home services she provides primarily entails talking with him and social workers to help him make decisions he cannot make on his own behalf. [AR 108]. She testified she has done this for about five years and is paid about $130 per week. [AR 108]. When asked what prevented her from working a day shift at her previous job, she indicated there was too much walking in that job and also "the kids get out of school at 2:30 [and] that's when all the activities begin." [AR 112-113]. The ALJ could properly consider plaintiff's ability to care for her disabled son and grandchildren, and the accompanying activities and responsibilities related to such care, in assessing her testimony about her subjective symptoms. See Morgan, 169 F.3d at 600 (holding that claimant's "ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of [claimant's] ability to work"); Clark v. Astrue, 2012 WL 423635, at *6-*7 (E.D. Cal. Feb. 8, 2012) (concluding that ALJ properly discounted claimant's subjective symptoms based on daily activities of caring for a disabled child, completing household chores, and other activities).

Furthermore, the ALJ noted that although plaintiff testified she does not drive, she repeatedly stated

that she is able to travel "[a]nywhere I have to go" on the bus. [AR 28, 116-117]. She testified that the bus stops on the corner near her apartment, and that she can coordinate taking multiple busses to get to a destination. [AR 116-117]. The ALJ also recounted her testimony that she is on her feet about two hours a day between the hours of 4:00 p.m. and 7:00 p.m.. [AR 28, 117]. These activities are inconsistent with her allegations of disabling pain, especially in light of her RFC for sedentary work, which entails only two hours of standing or walking in an eight hour work day. See, e.g., Hamilton v. Astrue, 2010 WL 3748744, at *7 (C.D. Cal. Sept. 22, 2010) (concluding that ALJ properly discounted claimant's subjective complaints that she could not ambulate effectively based on testimony that she could walk up a flight of stairs, take the bus without assistance several times a month, and shop); Macias v. Astrue, 2010 WL 3632807, at *9 (E.D. Cal. Sept. 14, 2010) (concluding that ALJ properly discounted claimant's subjective complaints based on his testimony that he could run errands, take a bus where he needs to go, and cook, among other activities).

      Finally, the ALJ observed that, in April 2009, plaintiff reported to a nurse practitioner that ibuprofen helped her knee pain, but that she stopped taking it due to "worr[ies] about her stomach." [AR 28, 312]. The nurse practitioner prescribed her Motrin[2], but plaintiff later reported this upset her stomach, so she only took it three times a week. [AR 28, 310, 313]. The ALJ found that, despite plaintiff's concerns and stomach problems, the treatment record contains little evidence that she inquired about other pain relievers or different dosages that might relieve the perceived or actual side effects. [AR 28].

      Plaintiff contends that the ALJ's "entire rationale" is undermined by the fact that plaintiff was also taking omeprazole, a drug "for stomach problems . . ." [JS at 7]. Although plaintiff provides no citation to the record, a treatment note indicates that in June 2009, plaintiff resumed taking Motrin "but has to take omeprazole [once] a day." [AR 308]. The treatment note also indicates that her "[k]nee pain improved" with this combination of drugs. [AR 308]. Contrary to plaintiff's argument, the evidence that plaintiff was able to take Motrin in combination with omeprazole, and that her knee pain improved on this regimen, supports the ALJ's credibility finding. Motrin is considered a conservative treatment. See Pruitt v. Astrue,

---

    [2] Motrin is a brand of ibuprofen, which is a nonsteroidal anti-inflamatory drug used to treat "mild to moderate" pain. See United States National Library of Medicine, PubMed Health website, at www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0010648/ (last accessed Jan. 9, 2013).

2012 WL 2006150, at *2 (C.D. Cal. June 5, 2012) (citing cases holding that Motrin is conservative treatment). Moreover, later treatment notes indicate that plaintiff's medication was reduced to low strength adult aspirin [AR 283, 287, 290, 292], an even more conservative treatment. See Torres v. Astrue, 2012 WL 1032897, at *6 (C.D. Cal. March 27, 2012) (holding that ALJ properly considered aspirin and topical anti-inflamatory gels as conservative treatment). It was not until August 2010 that she was again prescribed ibuprofen. [AR 287]. Apparently, plaintiff was unable to fill the prescription, and returned to taking low strength aspirin. [AR 283]. Plaintiff has pointed to nothing in the record demonstrating that she inquired about or needed stronger or different pain medication than the medication she actually took. The ALJ's observation that plaintiff did not seek, and was not prescribed, stronger or different pain relievers is a legitimate, convincing reason for discrediting her allegations of chronic pain. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (explaining that ALJ may infer that claimant's "response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (explaining that ALJ properly considered, as part of his credibility evaluation, the treating physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged) (citing Bunnell, 947 F.2d at 346); Pruitt, 2012 WL 2006150, at *2 (concluding that ALJ properly discounted claimant's subjective complaints of debilitating pain because she received conservative treatment consisting of Motrin and muscle relaxants, and did not undergo more aggressive treatment such as narcotic or steroidal medication).

      The ALJ did not fail to consider plaintiff's testimony, or wholly reject it, as plaintiff contends. Rather, the ALJ rejected the opinions of consultative examiners for a much less restrictive RFC [see AR 28], and instead fashioned an RFC almost entirely consistent with plaintiff's testimony. Where, as here, the ultimate credibility finding is supported by substantial evidence in the record, the ALJ's decision must be upheld. See Carmickle, 533 F.3d at 1162-1163.

///

///

///

6

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

January 9, 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge